This is an appeal by McGiffert from an order granting summary judgment to the relator Stowe and to two cross-defendants and denying his motion for summary judgment in a quo warranto proceeding. The order also enjoined McGiffert from the further practice of law.
The quo warranto proceeding was initiated after McGiffert placed the following ad in a local newspaper:
------------------------------------------------------------- | | | Considering Divorce ? ? | | | | If there is no contest, you can get your divorce | | | | WITHOUT ATTORNEY'S FEE. | | | | The whole cost will be only $100.00. | | You pay court costs of $36.00. | | | | WRITE: | | | | TOWNLEY SERVICES | | | | P.O. Box 317 | | Kent, AL 36045 | | | | CONFIDENTIAL AND GUARANTEED | -------------------------------------------------------------
The quo warranto petition averred that McGiffert had intruded into the practice of law without a license and sought to exclude him from the practice of law and to enjoin him from the future practice of law. Appellant McGiffert, representing himself at the trial level, filed what is characterized as a "cross-claim" (third-party complaint) against Circuit Judge Joe Macon and Ernest C. Hornsby, as President of the State Bar Association, alleging that they "conspired together to contact the publisher of the Wetumpka Herald and to intimidate him or discourage him from performing his contract * * * to publish the advertisement * * *." After the judges of the Nineteenth Judicial Circuit recused themselves, the Chief Justice appointed the Honorable George H. Wright, Jr., Circuit Judge from Opelika, Alabama, to preside over this case.
Answer to the original quo warranto suit was filed by McGiffert and answers to the cross-claims were filed by Judge Macon and Ernest C. Hornsby. Thereafter, motions for summary judgment were filed by relator Stowe and cross-defendants Judge Macon and Hornsby, supported by affidavits of John P. Harris, publisher of the Wetumpka Herald, the pleadings in the cause, the answer of McGiffert, the answers of cross-defendants Judge Macon and Hornsby to interrogatories propounded to them by McGiffert, and the answers of cross-defendants Judge Macon and Hornsby.
The motions for summary judgment were set for submission before Judge Wright on the 9th day of March, 1978, at 10.00 A.M., *Page 682 
without oral argument. On that day, McGiffert filed a motion for summary judgment basing it upon the pleadings and affidavit of John P. Harris attached thereto. It appears that the cause came on for submission before the Court on the day set, and although the attorneys for the relator Stowe and cross-defendants were present, McGiffert was not present. The various motions were then submitted to the Court.
On April 13, 1978, Judge Wright rendered judgment: granting the summary judgments filed by the relator and by cross-defendants Judge Macon and Hornsby; denying the motion for summary judgment filed by McGiffert; dismissing the cross-claims; finding that McGiffert had been unlawfully intruding into the profession of law, a profession requiring a license, for which he was not licensed; and, ordering him to forthwith cease and desist and, in the future, refrain from the performance of any acts which constitute the practice of law. On April 26, 1978, Judge Wright amended his judgment in a particular not material to the issues here.
On May 3, 1978, McGiffert filed a notice of appeal "from adverse judgement in this case, appealing from the judgement granting the summary judgement and from judgement of this court denying my motion for summary judgement."
Motions to dismiss the appeal because of failure of appellant McGiffert to file an adequate notice of appeal and failure to give proper security of cost were submitted when this cause was submitted on the merits. In view of the result we reach in this case in affirming the summary judgments granted by the trial court, it is unnecessary that we write to the issues raised by the motions to dismiss. Therefore, we pretermit their consideration.
The central issue in this case is whether or not the grant of the various summary judgments was appropriate. Putting it differently, did the original plaintiff in the quo warranto suit (the relator Stowe) and the cross-defendants (Macon and Hornsby) fail to satisfy their burden of establishing that there is no genuine issue as to any material fact in this case? The answer is that the burden was satisfied, that no genuine issue as to any material fact exists in the case, and the cause is to be affirmed.
In considering this central issue, as to the propriety of summary judgment, it is necessary to relate certain uncontroverted facts gleaned from the various papers supporting the motions for summary judgment.
The advertisement was placed, and paid for, by McGiffert in the Wetumpka Herald on November 17, 1977. The publisher of theWetumpka Herald, John P. Harris, stated unequivocally that he had never had any conversation with Ernest C. Hornsby concerning the publishing of the advertisement nor concerning McGiffert. He did have a telephone call from Judge Macon who simply "told me that the service offered by the ad was illegal and that I and the Wetumpka Herald would be in violation of the law if the ad was published again."
First, we consider the propriety of granting summary judgment for the quo warranto plaintiff, relator Stowe. It seems to us to be self-evident that the advertisement placed by McGiffert was an intrusion into the profession of the practice of law without having become duly licensed to practice in that he held himself out to the public as a person qualified to practice law by virtue of the ad. This is the only possible interpretation which could be placed on the advertisement in question, it seems to us.
We do agree with appellant McGiffert that if the advertisement is susceptible of more than one meaning then summary judgment would be inappropriate and the case is due to be reversed. McGiffert did state, in his answer, that his motive behind the ad was to conduct a survey to find out the number of individuals who would be interested in securing uncontested divorces at a cost below the current market rate and that he planned to use such information to attract young attorneys through the lure of an established market and that the $100 mentioned in the ad would be used to pay the salaries of these attorneys in securing *Page 683 
divorces for middle income couples seeking a divorce. However, we are not impressed with McGiffert's contention as to his subjective motive or intent in publishing the advertisement. We think the ad speaks for itself.
In Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975) we noted with approval the following quotation from § 159 TheLaw of Libel and Slander in the State of New York, Seelman, Vol. 1, which, incidentally, reflects the rule of our cases, and is, we think, applicable here, viz.:
 "Words should be construed according to their plain and obvious meaning. The construction a court should adopt is to be derived from the expressions used, as from the whole scope and apparent object of the writer. It is the manner in which they will be most probably understood. Words are to be understood in their plain and popular sense, in court as elsewhere. Words are to be construed as understood by mankind in general, in their ordinary meaning. The language of the alleged libel is to be understood as used in the ordinary and most natural sense. [Footnotes omitted.]"
This Court held in McGraw v. Thomason, 265 Ala. 635,93 So.2d 741 (1957):
 "In determining their actionable character, the printed words are to be taken in their natural meaning, and according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them. A forced construction is not to be put upon them in order to relieve the defendant from liability, nor are they to be subjected to the critical analysis of a trained legal mind, but must be construed and determined by the natural and probable effect on the mind of the average lay reader."
We do not see, under any stretch of construction, how words in this ad, construed according to their plain and obvious meaning, and according to the sense in which they appear to have been used and the idea they are apparently adapted to convey to those who read them, could be read as conveying the notion that McGiffert was conducting a "survey." Even McGiffert himself, in his answer, does not contend that a reader of ordinary or average intelligence could construe the words "without attorney's fee" to mean "with attorney's fee." For one to represent to the public that, for $100 plus court cost, oneguaranteed to obtain a divorce if uncontested without attorney's fees, seems clearly in violation of § 34-3-1, Code of 1975, which provides "if any person shall, without having become duly licensed to practice law, * * * practice or assume to act or hold himself out to the public as a person qualified to practice or carry on the calling of a lawyer, he shall be guilty of a misdemeanor and fined not to exceed $500, or be imprisoned for a period not to exceed six months, or both." It would seem to be clear that only a licensed lawyer may obtain an uncontested divorce for another person without violating the statute.
We see no uncertainty or ambiguity which needs to be resolved and thus no genuine issue of fact is presented with regard to the meaning of the advertisement. Neither Loveless v. Graddick, supra, nor African Methodist Episcopal Church v. St. PaulMethodist Church of Selmont, 295 Ala. 343, 329 So.2d 542 (1976) nor Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117
(Ala. 1976) is in conflict with this holding. Loveless v.Graddick, supra, involved a suit for libel in which the defendant was accused of running an advertisement which by innuendo charged plaintiff with criminal fraud. We held that an issue of fact was presented as to whether or not the advertisement charged criminal fraud and, moreover, pointed out that usually the question of "malice" is for the jury. InAfrican Methodist Episcopal Church, supra, it was held that a genuine issue of material fact, as to whether parties to a deed intended for the national religious organization or the local church to have an interest in the property, precluded summary judgment as a matter of law. In Willis, supra, we held that disposition of the issue of "actual malice" by summary judgment in a defamation *Page 684 
action is generally inappropriate, although in that case where there was no proof of malice offered at all, we held summary judgment to be appropriate.
We move now to consider the propriety of granting summary judgment for the cross-defendants Judge Macon and Hornsby. We opine that the trial court was correct in ruling in their favor.
In light of our view, already expressed, that this is a case where a person, not possessing a law license, holds himself out to the public as qualified to obtain divorces for a fee, a contract to publish such an advertisement would be unenforceable since the carrying out of the subject matter of the ad, i.e., obtaining divorces by a non-lawyer, would violate § 34-3-1, Code of 1975. Nor, do we find the record to disclose any fraud, force or coercion on the part of either cross-defendant to seek to prevent the publisher of theWetumpka Herald from publishing the advertisement submitted by McGiffert. In fact, the publisher categorically stated that he had not talked to Hornsby about the matter at all.
In view of these reasons, it is not necessary that we address ourselves to the contention that Judge Macon had the right to do what he did for the public good or that he is immune from liability for his acts in investigating such matters. Thus, we pretermit discussion of these contentions.
By way of conclusion, we mention three issues, which we have not heretofore addressed in this opinion, but which the appellant McGiffert contends precluded the grant of summary judgment. First, he contends he was deprived of his "first amendment" rights to free speech and association with similarly situated individuals in the common pursuit of obtaining low cost divorces. What we have said heretofore with reference to the ad should answer this contention. We see no first amendment violations in the court's order. Next, appellant McGiffert insists that he was denied "due process" by the court's order which set the three pending motions for summary judgment for submission without oral argument, although, he contends, an oral argument was held at the submission. We have inspected the record and find nothing therein to indicate that appellant McGiffert was denied his right to be present; in fact, the record indicates that he knew of the hearing but chose not to be present. We do not find that the transcript of the proceedings indicates any "hearing" in its technical sense was held. The cause was simply submitted to the court. Appellant McGiffert could have been present had he so chosen and since he did not, we do not see any deprivation of "due process" of law. Finally, it is contended that the court's order went too far. We think the order was within the pleadings and prayers for relief.
It is thus that we conclude that the grant of various summary judgments by the trial court and the denial of appellant McGiffert's motion to dismiss and motion for summary judgment are due to be affirmed. As we have already indicated, in view of the result we reach, we pretermit discussion and ruling on motions to dismiss the appeal.
AFFIRMED.
FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.